**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
UNITED STATES OF AMERICA,     :
                              :
                              :   Crim. No. 12-303 (NLH/AMD)
                              :
     v.                       :
                              :   **OPINION**
                              :
ADAM LACERDA, a/k/a "Robert   :
Klein," *et al*.,             :
                              :
          Defendants.         :
_____:

**HILLMAN, District Judge**:

On the morning of trial on August 12, 2013, the United States moved to admit evidence pursuant to Rule 404(b) of the Federal Rules of Evidence of certain Defendants' contacts with potential victims and witnesses in this criminal matter in violation of an existing court order. For the reasons that follow, the motion shall be granted.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts of this case are familiar to all parties, and the Court therefore need not provide a full factual recitation here. In short, the Defendants in this criminal proceeding are charged with devising and executing a scheme to defraud timeshare owners of their money and property through a business entity known as the Vacation Ownership Group ("VO Group").[1] Several Defendants are also charged with

---

[1] Ten Defendants were initially indicted in this matter: Adam Lacerda a/k/a "Robert Klein," Ashley Lacerda, Ian Resnick, Steven Cox a/k/a "Steve Coluzzi," Alfred Giordano a/k/a "Alex Jordan," Francis Santore a/k/a "Frank Martin," Brian Corley a/k/a "John Corley," Joseph

committing unemployment fraud for allegedly failing to report income they garnered from the VO Group while simultaneously collecting unemployment benefits from the New Jersey Department of Labor.  The Defendants were arrested and made their initial appearances in April of 2012.  Shortly thereafter, the United States Magistrate Judge assigned to this case authorized the pretrial release of several Defendants, but imposed certain restrictions as a bail condition.  One of these restrictions was an express order that Defendants were "to avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, with the exception of any co-defendants[.]"

A pretrial hearing was held on June 13, 2013, at which time the United States brought to the Court's attention that several victims and potential witnesses had informed the Federal Bureau of Investigation ("FBI") case agent that representatives of VO Financial — the successor corporation to VO Group — had recently contacted them.  Defense counsel indicated that they were unaware of these calls, but stated that VO Financial utilized an "auto dialing" system and suggested that perhaps these individuals were contacted accidentally as a result.  The Court reminded all the Defendants of their pretrial release condition imposed by the Magistrate not to contact any victims or witnesses in this matter, and indicated that counsel should make further inquiry into the situation so as to resolve the problem.

---

DiVenti, Joseph Saxon, and Genevieve Manzoni. To date, Defendants Cox, Giordano, Santore, Corley, and Saxon have all entered guilty pleas before this Court.

On July 19, 2013, the United States issued a trial subpoena to VO Financial, seeking recordings of telephone calls and documents related to such recordings with respect to individuals the United States had identified as potential victim witnesses in this case. Amongst the documents produced in response to the subpoena[2] were notes entered by VO employees into the company's customer service recording system "Pipeline."[3] The Pipeline records show that victim witnesses Karen Wolff, Mary Hamelin, Ella Culver, David and Marie Jasper, and Ricky Baker were contacted — either directly or indirectly — by Defendants Adam Lacerda, Ashley Lacerda, and Ian Resnick after these defendants were federally charged in April 2012 and their bail condition of no victim or witness contact was imposed by the Magistrate.[4] These prohibited contacts were also made after Defendants had access to discovery at the FBI's offices for inspection and review purposes,

---

[2] Since the time the Court issued its oral ruling on this issue, additional evidence from the Pipeline documents has revealed that Defendants Adam Lacerda, Ashley Lacerda, Ian Resnick and others formulated a detailed plan to identify, glean information from, mislead, and seek to compromise potential victims and witnesses through use of robo-calling and a directed script. It appears the system was designed to tamper with as many potential witnesses as possible. A more detailed description this evidence will be described in a subsequent opinion addressing Adam Lacerda's revocation of bail and detention.

[3] The United States has proffered to the Court in its written submission, and Defense Counsel has orally confirmed on the record, that all counsel have stipulated that the documents are authentic and records kept in the ordinary course of VO's business, but all parties have reserved the right to object to admission of the documents on relevance grounds.

[4] The orders setting forth conditions of release initially signed and entered by the Magistrate Judge in April of 2012 did not contain the restriction on contacting victims and witnesses in this case. In June of 2012, however, the orders were amended to include this additional restriction on Defendants.

3

including FBI 302 statements of alleged victims of Defendants' allegedly fraudulent scheme. More specifically, the Pipeline notes indicate that VO employees contacted potential victims and witnesses to advise them that they could obtain full refunds for the monies they previously paid to the VO Group if they executed a release agreement precluding them from subsequently pursuing litigation against the company. The evidence includes recordings in which Defendant Resnick directly contacted witness Wolff in late August and November of 2012 and attempted to persuade her to sign such a release. On these recordings, Resnick made several material misrepresentations to Wolff about the status of VO Group and the ongoing criminal investigation and prosecution. Resnick also made statements on the recordings which indicated that he had spoken to co-Defendants Adam and Ashley Lacerda about Wolff's file at the company, and that they were, at a minimum, aware that Resnick was attempting to obtain a release from Wolff. The Pipeline notes also reveal that VO employees contacted several other witnesses for the refund and release deal at the direction of Ashley Lacerda. Moreover, the documents indicate that Ashley Lacerda directed in-house counsel at VO Financial to write a letter to Wolff — who VO believed had declined the deal on advice of her own attorney — to advise her to reconsider her denial on the basis her attorney had given her poor legal advice.[5] Finally, the Pipeline documents likewise

---

[5] It appears that the letter sent by in-house counsel for VO Financial violated New Jersey Rule of Professional Conduct 4.2, which states, in relevant part, as follows: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable

4

show that Ashley Lacerda entered notes in the system of dates in which the individuals were interviewed by the FBI and the Government — dates which directly correlated to information produced to Defendants at the FBI offices — and that these individuals were subsequently contacted and offered the refund and release deal.

The United States brought this information to the Court's attention on the morning of trial on Monday, August 12, 2013, and advised the Court that it sought to introduce this evidence during trial pursuant to Rule 404(b) of the Federal Rules of Evidence. Counsel for Defendants Ashley Lacerda and Ian Resnick objected on Rule 403 grounds, arguing that introduction of this evidence would confuse and mislead the jury, and would waste time and result in undue delay in an already protracted and complicated trial.[6] Counsel for the remaining Defendants likewise joined in the objection pursuant to Rule 403, and added that admission of such evidence would unduly prejudice their clients by way of "spillover" prejudice that would unfairly link them to this improper conduct.

After hearing argument on the issue, the Court orally ruled from the bench that it would grant the Government's request and permit it to introduce this evidence, but that a limiting instruction to the jury to remedy the effects of spillover prejudice was necessary under the circumstances. Following its oral decision, the Court indicated

---

diligence should know, to be represented by another lawyer in the matter[.]" N.J. R.P.C. 4.2.

[6] Counsel for Resnick also objected on hearsay, relevance, and authenticity grounds, arguing that it remains unknown at this point in time how exactly the Pipeline system operates.

5

that it would supplement its ruling with a written opinion detailing its grounds for admission of the evidence on Rules 403 and 404(b) grounds. This Memorandum Opinion and accompanying Order serve to supplement the oral record on this issue.

**II. DISCUSSION**

Federal Rule of Evidence 404(b) prohibits evidence of "extrinsic acts" or "other acts" that is intended to show a defendant's propensity to commit crimes or to adversely reflect upon the defendant's character. The Rule provides as follows:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b). The Third Circuit Court of Appeals has previously recognized that Rule 404(b) is a rule of inclusion rather than exclusion, and that evidence of other conduct is admissible "if such evidence is relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime." United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003); United States v. Long, 574 F.2d 761, 765 (3d Cir. 1978). The Third Circuit has likewise cautioned, however, that trial courts should be careful in accepting the government's proffered purpose for admission of the evidence, which "may often be potemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992). In

Huddleston v. United States, 485 U.S. 681 (1988), the Supreme Court of the United States adopted a four-part test to determine whether Rule 404(b) evidence should be admissible:

> (1)the evidence is relevant; (2) the evidence is offered for a proper purpose; (3) the evidence's probative value outweighs its potential for unfair prejudice; and (4) the Court must charge the jury to consider the evidence only for the limited purpose for which it is admitted.

Id. at 691-92; see also United States v. Moore, 375 F.3d 259, 263-64 (3d Cir. 2004). Importantly, as indicated by the third Huddleston factor, even if the evidence is otherwise admissible under Rule 404(b), its probative value must still outweigh any undue prejudice to the defendant under Rule 403. See United States v. Davis, -- F.3d --, 2013 WL 4035547, at *5 (3d Cir. Aug. 9, 2013).

In applying the four Huddleston factors to the instant case, it is evident to the Court that Defendants' subsequent contacts with potential victim witnesses are admissible under Rule 404(b) and that the introduction of such evidence is permissible under Rule 403.

The first factor instructs the Court to consider relevancy, while the second factor relates to the propriety of the evidence. For practical purposes, the Court jointly considers these two factors. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.'" United States v. Ballard, Crim.No.11-455, 2012 WL 72707, at *3 (E.D. Pa. Jan. 10, 2012)(quoting Fed. R. Evid. 401). Similarly, evidence is proper if it is admitted for purposes other than to show that the defendant acted in conformity with a specific character trait. Ballard, 2012 WL 72707 at *5 (citing

7

Fed. R. Evid. 404(a); United States v. Johnson, 199 F.3d 123, 128 (3d Cir. 1999); United States v. Sampson, 980 F.2d 883, 887 (3d Cir. 1992)).

Here, the evidence is relevant because Defendants' subsequent contacts with potential victims and witnesses to offer them a refund in exchange for a release from pursuing litigation against VO Financial makes it more probable than not that Defendants defrauded these individuals in the first place. Moreover, the witness contacts are not being offered to show that the Defendants acted in conformity with a particular character trait, but rather as evidence that the Defendants subsequently attempted to pick up the crumbs of the trail left behind by their allegedly fraudulent scheme. The Second and Third Circuits have previously recognized that, "evidence such as attempted witness or jury tampering is admissible as probative of a defendant's consciousness of guilt." Bennett v. Poole, No.Civ.A.04-0014, 2008 WL 3200242, at *21 (W.D.N.Y. Aug. 5, 2008)(citing United States v. Perez, Crim.No.01-848, 2003 WL 721568 (S.D.N.Y. Feb. 28, 2003); United States v. Macklin, 926 F.2d 1323, 1329 (2d Cir. 1991); United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989); United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988); Huddleston, 485 U.S. at 691-92; Mealer v. Jones, 573 F.Supp. 675, 678 (S.D.N.Y. 1983); United States v. Gallego, 913 F.Supp. 209, 217 (S.D.N.Y. 1996)); see also United States v. Elwell, App.No.12-2202, 2013 WL 951002, at *5 (3d Cir. Mar. 13, 2013). Similar to the case at hand, the defendant in Elwell was precluded from having any contact with witnesses as a condition of his pretrial release — an order which he subsequently

violated when he called his former secretary who had been identified as a witness in the case. Id. On appeal, Elwell argued that the district court should not have permitted the government to cross-examine him regarding his violation of the bail order. Id. The Circuit Court disagreed, however, finding the evidence admissible under Rule 404(b):

> Rule 404 bars evidence of prior acts to demonstrate a person's propensity for those actions, but such evidence can be admissible when used for a non-propensity purpose. Here, the district court permitted the evidence of Elwell's telephone call on the basis that it could be viewed as an attempt to avoid punishment by tampering with or intimidating a witness. Such witness tampering could in turn support an inference that Elwell was conscious of his guilt. The evidence thus served a non-propensity purpose.

Id. (internal citations omitted).

Our Court of Appeals' very recent decision in Elwell is directly applicable to the case at hand. Just as in that case, the Government here seeks to introduce the evidence of Defendants' subsequent contacts with victims and witnesses as Adam Lacerda, Ashley Lacerda, and Ian Resnick's consciousness of guilt. These Defendants' direct or indirect contact with victims and witnesses could likewise be viewed as Defendants' attempt to disguise the fruits of their alleged crimes and avoid harsher punishment. It is therefore relevant to the overall criminal conduct charged in the Indictment, and is properly being offered for a non-propensity purpose. Accordingly, the first two Huddleston factors are satisfied under these circumstances.

Under the third factor, courts must conduct a standard Rule 403 balancing test to determine if the probative value of the evidence outweighs its potential for unfair prejudice. United States v. Davis,

-- F.3d --, 2013 WL 4035547, at *5 (3d Cir. Aug. 9, 2013). As discussed above, it is well-recognized that evidence of attempted witness or jury tampering is admissible as probative of a defendant's consciousness of guilt. Accordingly, the probative value of the evidence that the United States seeks to introduce here is considerably great. The only remaining inquiry under the third Huddleston factor, therefore, is whether the probative value of this evidence outweighs any prejudice that may result from its admission.

All Defendants argue that introduction of this evidence would mislead the jury, waste time, and result in undue delay in an already protracted and complicated trial in violation of Rule 403. The Court, however, disagrees. As proffered by the Government, the introduction of this evidence would not consume an exorbitant amount of time at trial. Indeed, the Government contends that the longest tape included in this evidence is only twelve minutes long, and that, in addition to this recording, it otherwise only seeks to use the recording of two short voicemail messages left by Defendant Resnick for one of the witnesses. Moreover, as made clear by the Court in its oral ruling from the bench, the Government is advised to be careful and "surgical" in its line of questioning in this area so as not to unintentionally stumble over the trip-wire of inadmissible prejudicial evidence.

The Court likewise disagrees with Defendants' contentions that the introduction of this evidence would somehow mislead the jury. In essence, this argument implies that the jury would somehow be unable to compartmentalize the evidence as to each defendant. The Court finds that such an assertion underestimates the abilities of the jury.

One need not have a familiarity with the law to determine that Defendant Resnick's voice on a recording or Defendant Ashley Lacerda's notes in a document directing her employees to contact witnesses are evidence of consciousness of guilt as to those Defendants and not others.  Nor would the introduction of this evidence confuse the jury by conflating the issues before them.  To the contrary, Defendants' subsequent contacts with victims and witnesses to cover their tracks goes hand in glove with the fraudulent scheme they are charged with devising, and the connection between the two is therefore logically evident.  As such, Defendants' contentions on these grounds are unavailing.

Defendants DiVenti and Manzoni further argue that they would be unduly prejudiced by the effect of "spillover" that would artificially link them, in the eyes of the jury, to improper conduct done by their co-Defendants.  All Defendants in this case are charged with conspiracy to commit mail and wire fraud.  In the context of admissibility under Rules 403 and 404(b), the Third Circuit has previously indicated that evidence of one defendant's prior bad acts is "especially probative when the charged offense involves a conspiracy." United States v. Cross, 308 F.3d 308, 323 (3d Cir. 2002)(citing United States v. Mathis, 216 F.3d 18, 26 (D.C. Cir. 2000); United States v. Manner, 887 F.2d 317, 322 (D.C. Cir. 1989); United States v. Merkt, 794 F.2d 950, 963 (5th Cir. 1986); United States v. Sampol, 636 F.2d 621, 659 n.23 (D.C. Cir. 1980)); see also United States v. DiPasquale, 561 F.Supp. 1338, 1347 n.15 (E.D. Pa. 1983).  Moreover, it has likewise been recognized within this Circuit

that the potential of prejudicial spillover does not preclude the introduction of prior bad acts evidence unless it substantially outweighs the probative value of the evidence and is <u>unduly</u> prejudicial to a co-defendant. <u>See</u> <u>United States v. Ramos</u>, 971 F.Supp. 186, 196 (E.D. Pa. 1997). In <u>Ramos</u>, forty-four individuals were charged with conspiring with one another to run an extensive cocaine distribution operation in Philadelphia. <u>Id.</u> at 188. With the exception of the five defendants that proceeded to trial, all of the other individuals involved in the drug operation pled guilty. <u>Id.</u> During the trial, the government introduced evidence that some members of the drug operation had engaged in seriously disturbing violent conduct. <u>Id.</u> at 188-89. None of these violent actions in furtherance of the conspiracy, however, were committed by the five defendants at trial. <u>Id.</u> at 190. Following their convictions, the five defendants moved to set aside their sentences under 28 U.S.C. § 2255 on that basis that this evidence should not have been admitted at trial under Rules 403 and 404(b) since it tainted their character and made them look guilty in the eyes of the jury by unfairly associating them with the co-conspirators that committed the violated conduct. <u>Id.</u> at 191. The court, however, disagreed, finding that:

> It is difficult to conclude that there is a prejudicial spillover where, as here, there is substantial independent evidence of petitioners' guilt. . . . Although petitioners argue that the record was poisoned because the evidence was overly prejudicial as it tempted the jury to make bad character or association inferences, any risk that the jury would have been prone to convict petitioners due to inferences they might make from the challenged testimony was outweighed by the importance of the testimony and the overwhelming independent evidence against petitioners.

Id. at 195-96 (citing United States v. Sandini, 888 F.2d 300, 307 (3d Cir. 1989); United States v. Scarfo, 850 F.2d 1015, 1020 (3d Cir. 1988))(further citations omitted).

The same logic applies here. Just because DiVenti and Manzoni did not participate in the subsequent contacting of victims and witnesses to offer them a refund in exchange for a release does not automatically render such testimony unfairly prejudicial and inadmissible overall. As discussed above, this evidence is important because it evinces consciousness of guilt on the parts of Adam Lacerda, Ashley Lacerda, and Ian Resnick. As such, the importance of this testimony neutralizes any potential prejudice that may spillover over to Manzoni and DiVenti in the eyes of the jury. Moreover, the Government has not suggested — and has indicated that it will not suggest — that DiVenti and Manzoni engaged in the subsequent contact of any victim or witness in this case. Thus, Manzoni and DiVenti have not shown the Court how they would be unduly prejudiced by the admission of this evidence. Absent undue prejudice that substantially outweighs the probative value of the evidence, Rule 403 "'does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.'" United States v. Cross, 308 F.3d 308, 325 (3d Cir. 2002)(quoting United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998)). The Court therefore likewise finds that Rule 403 does not bar admission of this evidence.

Finally, the fourth Huddleston factor directs the court to charge the jury, if necessary and appropriate under the circumstances, to

consider the evidence only for the limited purpose for which it is being admitted.  When analyzed in conjunction with the third Huddleston factor requiring Rule 403 balancing, the Third Circuit and our sister district courts within its appellate jurisdiction have previously found that risk of undue prejudice and prejudicial spillover is significantly reduced if a proper limiting instruction is given to the jury indicating that it may only consider the evidence for the limited purpose for which it is being introduced.  See United States v. Elwell, App.No. 12-2202, 2013 WL 951002, at *5 (3d Cir. Mar. 13, 2013); United States v. Depiro, Crim. No.10-851, 2013 WL 663303, at *4 (D.N.J. Feb. 20, 2013); United States v. $39,785.00 in U.S. Currency, 828 F.Supp.2d 740, 742 (E.D. Pa. 2011).  Here, Defense Counsel sought such a limiting instruction and the United States did not oppose this request.  As such, the fourth Huddleston factor likewise counsels in favor of admitting this evidence.

**III.  CONCLUSION**

In light of the foregoing and for the reasons expressed on the record on the morning of trial on August 12, 2013, the Government's motion to admit evidence of certain Defendants' contacts with potential victims and witnesses in violation of an existing court order is granted.[7] An appropriate Order follows.

*/s/ Noel L. Hillman*

At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

Dated: August 16, 2013

---

[7]     The Court reserves the right to supplement this Opinion if additional evidence of witness and victim tampering comes to light.

14